IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GABRIELLE PRITCHETT,** | : | **Civil No. 1:19-CV-01493** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ALTERNATIVE BEARINGS** | : | |
| **CORPORATION and THOMAS G.** | : | |
| **MALLOY,** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the court are Defendants Alternative Bearings Corporation's and Thomas G. Malloy's motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) and transfer pursuant to 28 U.S.C. § 1404(a). (Doc. 15; Doc. 17.) For the reasons set forth below, the motions will be granted in part and denied in part.

## I.   **BACKGROUND**

This is an action for unpaid compensation brought by Plaintiff Gabrielle Pritchett ("Pritchett") against her former employer Alternative Bearings Corporation ("ABC") and its President, Thomas G. Malloy ("Malloy"). (Doc. 13, ¶ 5.) Pritchett is a Pennsylvania resident. (*Id.* ¶ 1.) ABC is an Illinois corporation with a principal place of business in Illinois. (*Id.* ¶ 3.) ABC has eight employees and sells ball

bearings to equipment manufacturers and retailers. (*Id.* ¶ 8; Doc. 18-2, ¶ 26.) Malloy is an Illinois resident and ABC's president and sole officer, and as such, he oversees all ABC's operations. (Doc. 13, ¶ 5; Doc. 18-2, ¶ 4.)

Pritchett worked for ABC as a sales representative from 2002 until her resignation in 2018. She alleges that ABC and Malloy failed to pay her certain commission, bonus, and salary payments that were contractually owed to her at the time of her resignation. Given the contract and personal jurisdiction matters at issue, a brief discussion of the parties' history is in order.

In the beginning of 2002, Pritchett was living in California and searching for a new job that would allow her and her husband to move to Pennsylvania. (Doc. 13, ¶ 16.) She was put in touch with Malloy, who agreed to hire Pritchett as a sales representative for ABC upon her moving to Pennsylvania. (*Id.* ¶¶ 17, 18.) ABC had no physical presence in Pennsylvania at the time, but the parties planned that Pritchett would work from her home and eventually a Pennsylvania office space that ABC was "open minded" to renting. (Doc. 13-4, p. 4 of 4.)

In March 2002, while Pritchett was still in California, she entered into an employment agreement with ABC that laid out the "terms and conditions" of her employment. (Doc. 13-4, p. 4 of 4; Doc. 21-1, ¶ 5.) The agreement specified that Pritchett would receive $2,000 per month for two months on a 1099 basis while she wrapped up her affairs in California and moved to Pennsylvania so that ABC would

not have to obtain an employment tax identification number for her. (Doc. 13-4, p. 3 of 4.) It further provided that upon Pritchett's move to Pennsylvania, she would join ABC as a sales representative and receive a salary of $3,000 per month, together with commissions in accordance with a specified commission structure. (*Id*. p. 2 of 4.)

Around July 2002, Pritchett moved to Pennsylvania and began her employment for ABC as a commissioned sales representative, a position she held for 16 years. (Doc. 13, ¶ 37.) Throughout her employment, Pritchett worked almost exclusively from her Pennsylvania home, together with her husband who also came to work for ABC as a sales representative. (*Id*. ¶ 38; Doc. 21-1, ¶ 9; Doc 13-2.) Although Pritchett's employment agreement contemplated ABC opening a brick and mortar sales office in Pennsylvania, that never came to fruition. However, during the course of Pritchett's employment, ABC did advertise and hold out her and her husband on its website as making up ABC's "Pennsylvania-Sales Office," together with two Pennsylvania fax numbers, one Pennsylvania telephone number, and one unique 800-number. (Doc. 13-2; Doc 13-3.) The website listed the "Pennsylvania-Sales Office" as one of three ABC sales offices, in addition to its corporate office in Illinois. (Doc. 13-2.)

During the course of Pritchett's employment in Pennsylvania, she and Malloy modified, renegotiated, and reaffirmed various terms of the employment agreement,

including its compensation structure, through myriad correspondence. (*See* Doc. 13, ¶¶ 30-31, 35; Doc. 13-5; Doc. 13-6.) In August 2018, Pritchett resigned from the company, and Malloy sent Pritchett her "final checks." (Doc. 13, ¶ 49; Doc. 13-7, p. 2 of 2.)

In August 2019, Pritchett commenced this action against ABC and Malloy, alleging they owe her more than $80,000 in unpaid commissions and bonuses arising from sales Pritchett made that were not scheduled to ship until after her resignation, as well as unpaid salary.  (Doc. 13, ¶¶ 60, 61; *see also* Doc. 13-9.) The amended complaint's first two claims are against ABC for breach of contract and violation of the Pennsylvania Commissioned Sales Representative Act, 43 P.S. §§ 1471-1478 ("CSRA"). The amended complaint's third claim, pleaded in the alternative, is against ABC and Mr. Malloy for violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1 to 260.45 ("WPCL"). The basis of Pritchett's statutory claims, as with her contract claim, is that ABC and Malloy failed to pay her the salary and commissions she was allegedly owed by contract when she left ABC.

In October 2019, ABC and Malloy filed their present motions to dismiss for lack of personal jurisdiction, failure to state a claim, and to transfer venue to the Northern District of Illinois. (Doc. 15; Doc. 17.) Pritchett has responded in

opposition, and ABC and Malloy have replied. (Docs. 21, 22, 25, 26.) The matters are thus ripe for disposition.

## II.   **STANDARD OF REVIEW**

Pennsylvania's long-arm statute establishes a scope of personal jurisdiction to the extent allowed by the U.S. Constitution. *See Cruickshank-Wallace v. CNA Fin. Corp.*, 769 F. App'x 77, 79 (3d Cir. 2019) (citing 42 Pa. Cons. Stat. Ann. § 5322(b)). "When a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden to come forward with sufficient facts to establish that jurisdiction is proper." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129–30 (3d Cir. 2020) (internal quotation marks and citation omitted). "The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

Specifically, the plaintiff must show three factors: "First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *O'Connor v. Sandy Lane*

*Hotel Co.,* 496 F.3d 312, 317 (3d Cir. 2007) (internal citations, quotations, and brackets omitted).

Usually, the plaintiff can meet its burden "by submitting affidavits or other competent evidence demonstrating that jurisdiction is proper." *Estate of Thompson through Thompson v. Phillips*, 741 F. App'x 94, 96 (3d Cir. 2018). However, where, as here, "the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)); *see Estate of Thompson through Thompson*, 741 F. App'x at 96.

Under 28 U.S.C. § 1404(a), a district court may transfer a civil case to any other district where the action might have been initially brought, if transfer is convenient for the parties and witnesses and in the interest of justice. The movant bears the burden of persuasion to show that transfer is appropriate, and the "plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995). In determining whether a change of venue would be in the interest of justice, courts balance various private and public interest. The relevant private interest factors include: (1) the parties' forum preferences; (2) whether the claim arose elsewhere; (2) the convenience of the parties as indicated

by their relatively physical and financial condition; (4) the convenience of the witnesses, but only to the extent that witnesses may be unavailable for trial in one fora; and (5) the location of books and records. *Id.* The relevant public interest factors include: (1) the enforceability of the judgment; (2) practical considerations that might make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the public policies of the fora; and (5) the familiarity of the trial judge with applicable state law. *Id.* at 879-80. In deciding whether transfer is appropriate, the district court is "vested with a large discretion." *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973).

## III.   **DISCUSSION**

### a.  **The court has personal jurisdiction over ABC.**

ABC has challenged personal jurisdiction, so the burden rests with Pritchett to show that ABC purposefully directed its activities at Pennsylvania, that this case arises from those contacts, and that exercising jurisdiction comports with fair play and substantial justice. *Danziger & De Llano, LLP,* 948 F.3d 124 at 129. In breach of contract cases, to determine whether sufficient contacts exist, courts consider the totality of circumstances. *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001). Specific factors include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[.]"

*Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), HCMC-Vietnam*, 687 F.3d 163, 168 (3d Cir. 2012) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

Here, Pritchett has shown that ABC purposefully directed its activities at Pennsylvania. The evidence submitted by both parties demonstrates that ABC, acting through Malloy, entered into the employment agreement intending that Pritchett's employment and all of her obligations under the contract would performed in Pennsylvania. *See Novinger's, Inc. v. A.J.D. Constr. Co.*, 376 F. Supp. 3d 445, 452 (M.D. Pa. 2019). The agreement's terms made clear that Pritchett's business operating out of Pennsylvania would be treated "as its own profit center" for ABC whereby Pritchett would make sales, develop customer and vendor relationships, and coordinate the selling and purchasing of product on behalf of ABC. (Doc. 13-4, p. 3 of 4.) It also provided that ABC would pay Pritchett's "monthly business expenses" incurred in Pennsylvania including "phone, office supplies and equipment. We will pay for the installation of phone lines in PA." (*Id.*) Also as discussed above, the employment agreement expressly contemplated opening a sales office in Pennsylvania, and while Pritchett ultimate worked from her home, ABC held out her and her husband as the company's "Pennsylvania-Sales Office." (Doc. 13-2; *see also* Doc. 13-3.) ABC's execution of the employment

8

agreement clearly created continuing obligations between itself and Pritchett that were intended to reach into Pennsylvania. *See Burger King Corp.*, 471 U.S. at 476.

In addition, the employment contract's execution kicked off a course of dealing between Pritchett and ABC whereby ABC, through Malloy, reached into Pennsylvania to perform its obligations under the agreement. These extended contacts took place over the course of Pritchett's 16-year employment with ABC and included sending constant communications into Pennsylvania via email, telephone, and text message in furtherance of ABC business (Doc. 21-1, ¶ 23; Doc. 13, ¶ 39); exclusively compensating Pritchett via direct deposit to her Pennsylvania-headquartered bank (Doc. 13, ¶ 38); and paying payroll taxes to the Commonwealth of Pennsylvania (Doc. 13, ¶ 14.)

The evidence submitted by the parties also shows that the ABC's sales operations in Pennsylvania were an integral part of its overall business. Pritchett avers that she and her husband, working from Pennsylvania, constituted 40% of ABC's sales staff, a claim supported by a screen shot from ABC's website that lists Pritchett and her husband as two of only four ABC sales managers. (Doc. 13-3.) While ABC contests these numbers, its own estimates place ABC's former Pennsylvania sales staff—Pritchett and her husband—as constituting 21.59% of ABC's sales staff and 17% of its total employees. (Doc 18-2, ¶ 18.) At bottom, ABC's execution of the employment agreement and subsequent conduct over

Pritchett's long-term employment with ABC convince the court that it "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *N. Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 690 (3d Cir. 1990).

Pritchett's contract claim also arises out of and is related to ABC's Pennsylvania contacts. In contract cases, the plaintiff must show proximate causation or "substantive relevance" between their contract claim and the defendant's contacts. *Danziger & De Llano, LLP,* 948 F.3d at 130 (citing *O'Connor*, 496 F.3d at 318, 320). That is, "[t]he defendant's contacts with the forum must have been *instrumental* in either the formation of the contract or its breach." *Id.* (quoting *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)) (brackets omitted) (emphasis original). Pritchett has shown as much. Under the employment agreement and as born out over the parties' relationship, ABC assisted Pritchett with the sales she made from Pennsylvania and held her out as its Pennsylvania sales office. ABC compensated Pritchett for the sales that she made from Pennsylvania, by direct deposit to her Pennsylvania bank account. The gravamen of Pritchett's contract and other claims is that ABC breached its obligations under the agreement by failing to pay her for some of those sales that she made on its behalf from Pennsylvania. Moreover, the communication and "the alleged underpayment that induced the breach of contract claim was sent to Pennsylvania, causing an impact in the forum state" on a Pennsylvania resident. *Novinger's, Inc.,* 376 F. Supp. 3d at 453. Under

the circumstances, ABC's purported breaches were sufficiently intertwined with its Pennsylvania contacts, *see O'Connor*, 496 F.3d at 323, and it was foreseeable that ABC could be hauled into court in Pennsylvania in connection with such claims.

The same is true with respect to Pritchett's statutory claims under the WPCL and CSRA, since those claims arise from the same conduct—ABC's alleged failure to pay commissions—as her contract claim. Similarly, Pritchett's entitlement to recover for her statutory claims is based on her contractual right to payment under the employment agreement. *See Oberneder v. Link Computer Corp.,* 696 A.2d 148, 150 (Pa. 1997). Given this factual overlap, the court has jurisdiction over ABC with respect to Pritchett's statutory claims. *See O'Connor*, 496 F.3d at 317 n.3.

Finally, exercising jurisdiction over ABC would comport with notions of fair play and substantial justice. "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *O'Connor*, 496 F.3d at 324 (quoting *Burger King*, 471 U.S. at 477.) In balancing the reasonableness of exercising jurisdiction, courts consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate….judicial system's interest in obtaining the most efficient resolution of controversies," *Id.* (quoting *Burger King,* 471 U.S. at 477). Here, though ABC may suffer a burden

from having to travel and litigate here, "Plaintiff's injury occurred in Pennsylvania, and Pennsylvania surely has an interest in protecting its citizens and employees from employers' breach of contract and non-payment of wages." *Walsh v. Alarm Sec. Grp., Inc.*, 157 F. Supp. 2d 501, 507 (E.D. Pa. 2001). "When a Pennsylvania resident is injured in the Commonwealth, Pennsylvania has a strong interest in providing a forum for their resident and in having the responsible defendants accountable for their actions in Pennsylvania." *Elbeco Inc. v. Estrella de Plato, Corp*., 989 F. Supp. 669, 678 (E.D. Pa. 1997) (citing *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476 (3d Cir. 1993)). Along the same lines, Pritchett has strong interest in obtaining convenient and effective relief for her alleged unpaid wages. Exercising jurisdiction under the circumstances, despite ABC's burden of litigating here, would not be unreasonable, demonstrating that this is not among those "rare" and "compelling" cases where exercising jurisdiction would be unreasonable notwithstanding the defendant's minimum contacts. *O'Connor*, 496 F.3d at 325. The court thus has personal jurisdiction over ABC.

**b.  The court has personal jurisdiction over Malloy.**

Malloy argues that the corporate shield doctrine prevents the court from exercising personal jurisdiction over him. Under the corporate shield doctrine, "[i]ndividuals performing acts in a state in their corporate capacity are not subject to personal jurisdiction of the courts of that state for those acts." *Gentex Corp. v.*

*Abbott,* 978 F. Supp. 2d 391, 402 (M.D. Pa. 2013) (internal quotation marks and citations omitted); *see Maleski by Taylor v. DP Realty Tr.*, 653 A.2d 54, 63 (Pa. Commw. Ct. 1994). The doctrine's purpose is to prevent corporate officers from having to make a Hobson's choice of whether to "either disassociate themselves from the corporation or defend the propriety of their conduct in a distant forum." *PSC Prof'l Servs. Grp., Inc. v. Am. Digital Sys., Inc.*, 555 F. Supp. 788, 793 (E.D. Pa. 1983). "This general rule, however, does not apply when the corporate officer is charged with (1) committing a tort in his corporate capacity or (2) violating a statutory scheme that provides for personal, as well as corporate, liability for corporate actions." *United Prod. Corp. v. Admiral Tool & Mfg. Co.*, 122 F. Supp. 2d 560, 562 (E.D. Pa. 2000) (citing *National Precast Crypt,* 785 F. Supp. at 1191). "Likewise, a court may disregard the fiduciary shield if the defendant 'had a major role in the corporate structure, the quality of his contacts with the state were significant, and his participation in the tortious conduct was extensive.'" *Id.* (quoting *TJS Brokerage & Co. v. Mahoney*, 940 F. Supp. 784, 789 (E.D. Pa. 1996)). To determine whether consideration of the defendant's corporate contacts is proper, courts consider the totality of the circumstances including the defendant's role in the corporate structure, the quality of the defendant's forum contacts, and the nature and extent of the defendant's participation in the alleged violations. *See Beistle Co. v. Party U.S.A., Inc.*, 914 F. Supp. 92, 96 (M.D. Pa. 1996) (citing *Maleski by Taylor v.*

*DP Realty Tr.,* 653 A.2d 54, 59 (Pa. Commw. Ct. 1994) *and Rittenhouse & Lee v. Dollars & Sense, Inc.,* No. 83–5996, 1987 WL 9665, *6 n. 6 (E.D.Pa. Apr. 15, 1987)); *Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*, No. 3:14-CV-00852, 2015 WL 1963170, at *10 (M.D. Pa. Apr. 30, 2015) (citation omitted); *Lautman v. Loewen Grp., Inc.*, No. 99-CV-75, 2000 WL 772818, at *5 (E.D. Pa. June 15, 2000) (quoting *Rittenhouse & Lee*, 1987 WL 9665, at *3)).

Pritchett's sole claim against Malloy, asserted under the WPCL, implicates the second exception to the corporate shield doctrine because the statute provides for personal liabilities by corporate agents and officers, in appropriate circumstances. The WPCL provides employees and former employees with a statutory right to recover wages that are contractually owed to them by their employer. *See* 43 Pa. Stat. Ann. §26.5; *Oberneder*, 696 A.2d at 150. "The definition of an 'employer' under the WPCL has been held to include a corporation's highest ranking officers, because they are the persons who are likely to have 'established and implemented the policy for the non-payment' of the wages and benefits at issue." *Belcufine v. Aloe*, 112 F.3d 633, 635 (3d Cir.1997) (citation omitted); *see* 43 Pa. Stat. Ann. § 260.2a (defining employer to include "every person, firm, partnership, association, corporation…and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth"). Nevertheless, "to hold an 'agent or officer' personally liable for unpaid wages under the WPCL,

14

'evidence of an active role in decision making is required.'" *Mancini v. Concorde Grp.*, No. 2233 EDA 2013, 2014 WL 10575398, at \*10 (Pa. Super. Ct. Sept. 25, 2014) (quoting *Hirsch v. EPL Techs., Inc.*, 910 A.2d 84, 88 (Pa. Super. Ct. 2006)). "Specifically, an employee must establish that the 'agent or officer' was 'actively involved in corporate policy-making, such as corporate decision-making or corporate advisement on matters of pay or compensation.'" *Id.* (quoting *Hirsch*, 910 A.2d at 88).

Here, the parties' submissions show that Mr. Malloy oversees "all operations of the business." (Doc. 16-4, 4; Doc 13, 5.)  As ABC's President and sole officer, Malloy was singularly ABC's corporate decision-making during the relevant period, including with respect to the specific issue of Pritchett's alleged unpaid compensation.  Malloy personally negotiated and renegotiated Pritchett's compensation package throughout her employment, and personally sent Pritchett her final paychecks and a letter calculating her commission upon her resignation. (Doc. 13-7.) The record thus contains evidence that would support finding Malloy liable for Pritchett's alleged unpaid wages under the WPCL. In sum, Malloy's singular role at the top of ABC's corporate structure, his relevant contacts with Pennsylvania, and his clear personal participation in the alleged WPCL violations lead to the conclusion that the corporate shield doctrine does not prevent the court from exercising personal jurisdiction over Malloy insofar as Pritchett's claim against him is for violating a

15

statutory scheme that provides for personal liability for corporate actions. *See Patterson v. Olivet Int'l, Inc.*, No. 2:09-CV-1089, 2009 WL 4722807, at *6 (W.D. Pa. Dec. 2, 2009); *Biss v. Gehring-Montgomery, Inc.*, No. 16-CV-4472, 2017 WL 2224977, at *5 (E.D. Pa. May 22, 2017); *Johnson v. Phelps*, No. 05-CV-5555, 2007 WL 1030086, at *4–5 (E.D. Pa. Mar. 30, 2007); *Falcone v. WiredLogic, Inc.*, No. 06-CV-800, 2006 WL 8459813, at *12–13 (E.D. Pa. Oct. 26, 2006); *see also Gentex Corp. v. Abbott,* 978 F. Supp. 2d 391, 403 (M.D. Pa. 2013); *Schils Am. Acquisition Corp. v. Schils BV*, No. 3:05-CV-0588, 2006 WL 276998, at *3 (M.D. Pa. Feb. 3, 2006).

In addition, Pritchett has shown that Malloy has sufficient minimum contacts with Pennsylvania to give this court personal jurisdiction. Malloy purposefully directed his activities toward Pennsylvania for the same reasons outlined above because ABC's relevant contacts were largely—if not entirely—undertaken by Malloy in his capacity as President and sole officer of ABC. Malloy hired Pritchett intending that her employment would not begin until she became a Pennsylvania resident. Malloy also drafted, negotiated, and executed the employment agreement that forms the basis of Pritchett's WPCL claim, intending that it would be performed in Pennsylvania. (*See* Doc 13-4.) Further, the record also supports the inference that it was Malloy specifically who held out ABC on its website as having a Pennsylvania sales office. (*See* Doc. 13-2; Doc. 13-3; Doc. 16-4, ¶¶ 4, 13.)

16

Throughout Pritchett's long tenure with ABC, Malloy also constantly reached into Pennsylvania by email, text message, and telephone to oversee Pritchett's employment, including her compensation, and to perform ABC's obligations under the employment agreement. His discussions with Pritchett regarding ABC's business and her employment were frequent, touching on matters that included improving Pritchett's efficiency with transmitting documents from Pennsylvania, ABC purchasing office expenses for Pritchett in Pennsylvania, and ABC changing Pritchett's status from a W2 employee to a 1099 independent contractor to cut down on ABC's employment tax payments to Pennsylvania. (Doc. 25-1; Doc. 13-5.) Malloy and Pritchett also extensively discussed, modified, and argued over the employment agreement. (*See* Doc. 13, ¶¶ 30-31, 35; Doc. 13-5; Doc. 13-6.) One conversation culminated in Malloy promising to continue to abide by the employment agreement's compensation structure. (*See* Doc 13-6, p. 2 of 3.)

The court recognizes that some facts cut against finding minimum contacts, including Malloy's lack of physical presence in Pennsylvania and the fact that Pritchett's employment agreement was initially negotiated and executed outside of the Commonwealth. However, considering Malloy's hiring of Pritchett with the intent that her employment and employment agreement be performed in Pennsylvania, the nature and extent of his electronic communications with Pritchett, his singular role overseeing Pritchett's employment for an extended period time, and

his direct involvement in the underlying alleged violations, Pritchett has shown that Malloy has sufficient minimum contacts with Pennsylvania and that her claims relate to and arise from those contacts.[1]

Moreover, exercising personal jurisdiction over Malloy would comport with fair play and substantial justice. As discussed above, despite the burden faced by Malloy in having to travel to and litigate in this forum, Pennsylvania has a strong interest in adjudicating disputes involving matters of unpaid compensation owed to Pennsylvania employees. *See Walsh,* 157 F. Supp. 2d at 507; *Elbeco Inc.*, 989 F. Supp. at 678. Pritchett's interest in obtaining convenient and effective relief against Malloy is also strong under the circumstances. In light of these interests, exercising personal jurisdiction over Malloy here would not be unreasonable. Therefore, the court has personal jurisdiction over Malloy.

### c. ABC and Malloy have shown that transfer is appropriate.

ABC and Malloy also move to transfer this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). The court will therefore examine the public

---

[1] Malloy also argues that personal jurisdiction is lacking because only violations of the WPCL that occur within Pennsylvania provide a proper basis for the court's jurisdiction. As the Eastern District recently explained in a thorough and persuasive opinion, the cases that stand for that proposition trace back to *Central Pennsylvania Teamsters Pension Fund v. Burten*, 634 F.Supp. 128, 132 (E.D. Pa. 1986), a decision that misapplied Pennsylvania's long-arm statute by reading it more restrictively than the Due Process Clause. *Hickman v. TL Transportation, LLC*, 317 F. Supp. 3d 890, 896 (E.D. Pa. 2018). "Consequently, these cases are of limited precedential value" and are not persuasive. *Id.*

and private interest factors outlined above "to determine, on balance, whether the litigation would 'more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (quoting *Jumara*, 55 F.3d at 879).

### i. The public interest factors are neutral.

The parties agree that the enforceability of any judgment favors transfer because Malloy, ABC, and all ABC's assets are located in Illinois. *See Reightler v. Monmouth Bioproducts, LLC*, No. 3:13-CV-3019, 2014 WL 2480331, at *4 (M.D. Pa. June 3, 2014). The relative congestion of the courts, by contrast, favors retaining venue, since recent statistics show that the Northern District of Illinois has around 100 more cases pending per judgeship than this District. (*See* Doc. 16-5.)[2]

The remaining public interest factors are neutral. Specifically, the "public policies of the fora" factor is neutral because, while Pennsylvania has a public policy interest in ensuring that its employees receive unpaid compensation under the WPCL and CSRA, a transfer would not necessarily violate that policy since federal courts from around the country have routinely applied these statutes. *See Campanini v. Studsvik, Inc.*, No. 08-CV-5910, 2009 WL 926975, at *5 (E.D. Pa. Apr. 6, 2009) (collecting cases). The "local interest in deciding local controversies" factor is

---

[2] *See* also U.S. District Courts Combined Civil and Criminal Federal Court Management Statistics, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf.

similarly neutral. The Commonwealth has a local interest in protecting Pennsylvania employees that suffer unpaid wages under the WPCL and CSRA. At the same time, Illinois has a countervailing interest in deciding claims involving employment agreements negotiated and executed in Illinois by Illinois companies. The Third Circuit has indicated that these interests "offset." *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 410 (3d Cir. 2017).

Each district's relative familiarity with the applicable state law is also neutral. This court has more familiarity with Pritchett's Pennsylvania statutory claims than would a federal court in Illinois. However, there is a good chance that the employment agreement underlying her contract and statutory claims is governed by Illinois law, since it was negotiated, executed, and partially performed in Illinois. *See Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 689 (3d Cir. 1989). ABC's status as an Illinois company also supports the application of Illinois law, particularly when considering that at the time of contracting, neither party was located in Pennsylvania. *See id.*; Restatement (Second) of Conflict of Laws § 188 (1971). A federal court in Illinois would be more familiar than this court with Illinois contract law. Pritchett's claims are thus likely governed by both Illinois and Pennsylvania law, so this factor is neutral. In total, the public factors do not cut strongly for or against transfer.

ii.  The private interest factors favor transfer.

Pritchett's choice of forum is this District, while ABC and Malloy prefer the Northern District of Illinois. A plaintiff's choice of forum "is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). That is particularly true here, as Pritchett resides in and was employed by ABC in the Middle District. Malloy's and ABC's preference notwithstanding, Pritchett's choice of forum is entitled to deference and strongly supports retaining venue.

The factor concerned with the convenience of the witnesses, to the extent they be unavailable for trial, is neutral. This factor is focused on third-party witnesses. *Mato v. Window World, Inc.,* No. 10–7617, 2011 WL 710473, at *5 (E.D. Pa. Feb. 28, 2011) (citing *Myers v. Jani-King of Philadelphia*, Inc., No. CIV.A. 09-1738, 2012 WL 6058146, at *5 (E.D. Pa. Dec. 5, 2012)). "Party witnesses or witnesses who are employed by a party, on the other hand, have little impact on the balance of convenience analysis since each party is obligated to procure the attendance of its own employees for trial." *Chruby v. Bearjar,* No. 3:17-CV-01631, 2018 WL 4051705, at *12 (M.D. Pa. Aug. 24, 2018) (quoting *Coppola v. Ferrellgas, Inc.,* 250 F.R.D. 195, 199 (E.D. Pa. 2008)). Aside from potential party witnesses and those employed by ABC, there are three potential witnesses whom the parties have shown or agree that are likely to testify. These witnesses are: (1) a representative from

Blackline, a company hired by ABC, located in Illinois (Doc 25-2, ¶ 10); (2) Howard Pritchett, Pritchett's husband and former ABC sales representative, residing in Pennsylvania (Doc. 21-1, 8-9); and (3) Robert Malloy, Malloy's brother and an independent contractor for ABC, residing in Florida. (Doc. 22-2, ¶ 12; Doc 25-2, ¶ 8.) Each is a family member or agent of a party (or both), and no party argues that any of these witnesses may be unavailable for trial in either fora. *See Jumara,* 55 F.3d at 879. This factor is therefore neutral.

The remaining private interest factors support transfer to varying degrees. Specifically, the location of books and records minimally supports transfer. It appears to be undisputed that most of the documents relevant to this action are in Illinois. However, ABC and Malloy do not substantively claim that those documents would be unable to be produced in this District. *See Jumara*, 55 F.3d at 879. This factor therefore supports transfer, but only slightly.

The location of where the claim arose also supports transfer. The crux of all Pritchett's claims is that ABC and Malloy, while they were located in Illinois, failed to pay her certain salary and commission payments that she was owed. ABC's and Malloy's alleged wrongdoing thus occurred in Illinois. *See Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 295 (3d Cir.1994).

Most importantly, the convenience of the parties as indicated by their relative physical and financial condition favors transfer. Pritchett resides in the Middle

District. Malloy and ABC are located in Illinois, with ABC having no presence in Pennsylvania. Retaining venue would therefore be more convenient for Pritchett, while transferring venue to Illinois would be more convenient for ABC and Malloy. This factor therefore might seem to favor Pritchett because as a corporate entity, ABC ostensibly has more financial resources.

Digging deeper however, ABC has shown that a trial in this District would likely cause significant harm to its business. According to Malloy's declaration, ABC's corporate office in Illinois has only two employees, himself and longtime ABC office manager, Malia Berg ("Berg"). Berg oversees ABC's accounting, order processing, payroll operations, and commission reports, and as such, her testimony is necessary to a trial on Pritchett's compensation claims. (Doc. 18-2, ¶ 26.) According to Malloy, ABC cannot do business without his or Berg's physical presence in its Illinois office. Malloy attests that if Berg and him were to be out of town on the same day, ABC could not operate and would incur contractual penalties, risking the work of its eight employees as a result. (*Id*.) Notably, Malloy represents that in past 16 years, he and Berg have never been out of the office on the same day. (*Id*.; *see also* Doc. 25-2, ¶ 6.)

Pritchett does not challenge that Berg's unique role at ABC makes her testimony necessary, or that ABC cannot operate without Berg or Malloy being physically present in Illinois each day. In fact, Pritchett agrees that this case will

23

require testimony from multiple other ABC employees or independent contractors from around the country (*see* Doc. 21-1, ¶¶ 8-15), and requiring each of those employees to be physically present for trial in Pennsylvania, where ABC has no operations, would risk further harm to the business.  In addition, Pritchett does not provide any specific reason for why a trial in Illinois would inconvenience her, other than the general, but not insubstantial, inconvenience associated with litigating in a foreign state.

To be sure, the purpose of a motion to transfer venue is not to shift the convenience from one party to another. *Scanlan v. American Airlines Group, Inc.*, 366 F.Supp.3d 673, 676 (E.D. Pa.  2019). As between an individual and corporate entity, the inconvenience of traveling should normally fall to the latter. Here however, the choice is between inconveniencing an individual on the one hand, and impairing a small business's operations and the work of its eight employees on the other hand.[3] Even accounting for the parties' relative disparity in resources, as the court must, the convenience of the parties' favors transfer.

The private interest factors therefore favor transfer and, on the whole, ABC and Malloy have met their heavy burden of showing that this case should be heard in the Northern District of Illinois. The court does not make lightly the decision to

---

[3] The record contains little information on the parties' specific financial conditions other than Malloy's representation that ABC does $4,000,000 in annual revenue and that it compensated Pritchett around $230,000 per year during her last five years with the company.

transfer a Pennsylvania's plaintiff's claims arising, in part, under Pennsylvania law. Nevertheless, all Pritchett's claims derive from an employment agreement that was negotiated, executed, and allegedly breached in Illinois, and all or most of the relevant records are located in Illinois. Most importantly, Malloy and ABC have provided specific and credible reasons for why a trial in this District would impair ABC's ability to operate and meet its contractual obligations. Under the circumstances, transferring this case serves the interests of justice and convenience.

### d. The court will deny without prejudice ABC's and Malloy's motions to dismiss for failure to state a claim.

Having concluded that the matter should be transferred to the Northern District of Illinois, the court will deny ABC's and Malloy's motions to dismiss Pritchett's statutory claims for failure to state a claim, without prejudice to refile in the transferee court. *See Bearam v. Wigen,* No. 312-CV-2289, 2013 WL 1750964, at *4 (M.D. Pa. Mar. 20, 2013), *report and recommendation adopted,* No. 3:12-CV-2289, 2013 WL 1750999 (M.D. Pa. Apr. 23, 2013); *Farkas v. Rich Coast Corp.*, No. 2:13-CV-00926, 2014 WL 550594, at *1 (W.D. Pa. Feb. 11, 2014); *Fellner ex rel. Estate of Fellner v. Philadelphia Toboggan Coasters, Inc.*, No. 05-CV-2052, 2005 WL 2660351, at *7 n.5 (E.D. Pa. Oct. 18, 2005).

IV.   **<u>CONCLUSION</u>**

For the reasons set forth above, ABC's and Malloy's motions will be granted insofar as this action will be transferred to the Northern District of Illinois. An appropriate order shall follow.

*s/Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated:      June 2, 2020